Arthur S. CURTIS

v.

UNITED STATES.

No. 200-57.

United States Court of Claims.

Dec. 3, 1958.

Arthur S. Curtis, pro se.

M. Morton Weinstein, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LARAMORE, Judge.

Plaintiff, the creator and owner of a copyrighted cartoon strip, seeks to recover just compensation for the alleged taking of his property.

The facts as shown by the petition and affidavits filed are briefly as follows:

Plaintiff is the creator and owner of a copyrighted syndicated cartoon strip entitled "The Medal of Honor—True Tales of the Nation's Highest Award," which was published in a series beginning in 1945. The "strip" consisted of a series of action cartoon illustrations with explanatory text in the form of words which one of the figures in the cartoon is depicted as uttering, together with certain other descriptive words. The "strip" was in the style seen in the "comic" sections of newspapers. The medal of honor winners depicted by plaintiff were World War II heroes.

The medal of honor decoration was originated by congressional legislation in 1861 and is awarded by the President of the United States in the name of Congress. With respect to World War II and the Korean conflict recipients, defendant issued press releases relating to the awardees and their acts of bravery. A second press release was issued at the time of the presentation of the award. Such publicity usually consisted of a photograph showing the President or some high official of the Government bestowing the medal upon the awardee, or in the case of a posthumous award, upon the wife or the mother, together with a statement of the act of valor performed.

Plaintiff claims in his petition that he presented his medal of honor strip to the advertising firm of Foote, Cone and Belding and to the savings bond division of the Treasury Department with the understanding he would be paid if his idea was used. He further claims that without his consent and without payment to him, Foote, Cone and Belding provided a medal of honor series using his central idea for the Treasury Department to be used in publicizing the sale of defense bonds.

The Treasury Department did cause to be published in a number of magazines a series of advertisements to promote the sale of United States defense bonds. Each advertisement showed a photograph of a recipient of the medal of honor, together with a written comment and description of the act for which the medal was awarded and a statement urging the purchase of defense bonds. In some instances an artist's drawing of the act of heroism was inserted in the publication. In procuring the preparation and publication of these advertisements, the Treasury Department had the assistance of the Advertising Council which is a nongovernmental organization composed of persons active in industry and advertising fields. This Council promotes gratuitous advertising for causes of recognized general worthiness in the public interest. In this project, the Council has the cooperation of numerous advertising consultants who render gratuitous services to the sponsors of the beneficiary causes. Pursuant to established procedures, the Advertising Council had designated the firm of Foote, Cone and Belding to assist the Treasury Department in the preparation of advertising material for publication in magazines. That firm suggested to the Treasury's savings bond division the idea of featuring awardees of the medal of honor in the series of advertisements referred to above. The suggestion was adopted after its approval by the respon-

sible officers of the Department of Defense who furnished the Treasury Department with the photographs used in the advertisements and with the statements relative to the incidents for which the medals were awarded. On the basis of these photographs and statements the firm of Foote, Cone and Belding, in consultation with representatives of the savings bond division, designed, drafted, and prepared the copy for each of said advertisements. Proof copies were forwarded to the Magazine Publishers Association, an organization, representing magazines of large circulation in the United States which were cooperating in the work of the Advertising Council. The Association, in turn, distributed copies of the proposed advertisements to such magazines, with a solicitation for free publication, which published them by making free advertising space available for such purpose. However, before publication of said advertisements, the defendant obtained the consent of each individual to whom the medal of honor had been awarded or in the case of posthumous awards, the consent of his heirs or representatives.

Each party has filed motion for summary judgment and various issues were presented thereby. The first issue presented is whether plaintiff states a cause of action founded upon an implied contract.

The allegations in the amended petition upon which plaintiff must rely to support his implied contract claim are as follows:

"Among the advertising agencies to whom petitioner presented his medal of honor series for possible commercial or governmental use was Foote, Cone and Belding, 247 Park Avenue, New York, New York. Subsequent to said presentation to Foote, Cone and Belding and to the savings bond division of the Treasury Department of the United States, and without consent of or payment to petitioner, Foote, Cone and Belding produced for the savings bond division of the Treasury Department of the United States a medal of honor series using the same central theme and only slightly varied in style of presentation from the previously published works of petitioner. This series was given away in mat format to all sections of the publishing trade from to wit 1951 thru to wit 1953, in exchange for free space which included savings bond advertising. At least 30 stories were distributed in the Treasury Series on medal of honor winners, to more than 1,000 publications per story, which devoted more than $150,000,000 worth of free advertising space to said Treasury Series. Other uses were made of the medal of honor series idea of which petitioner does not at this time have sufficient concrete knowledge to set forth facts in this petition.

Petitioner, in presenting his own medal of honor series to both Foote, Cone and Belding and to the savings bond division of the Treasury Department of the United States, did so with the express oral understanding that he would be paid if his idea or material would be used. Petitioner has been paid nothing for use of his basic idea. Furthermore, the Government's give-away-mat program of its medal of honor savings bond series has destroyed the market which petitioner previously and otherwise had for his own medal of honor series, so that no American newspaper has contracted for the series with petitioner since the Government began giving its material away. * * * "

██ However, as shown by the affidavit of the Assistant National Director of the Savings Bond Division, Foote, Cone and Belding were never authorized to enter into contracts for the Government, and no officer or agent of the Government with authority to enter into a contract on its behalf ever had any dealings with the plaintiff with respect to the subject matter in suit. The petition

does not state the name or position of any officers or agents of the Government with whom any negotiations were had, nor is there an allegation that any person or persons with whom plaintiff claims to have negotiated, had authority to bind the Government or obligate it to pay compensation. Nor has plaintiff in his counter affidavit named persons with whom he claims to have negotiated. In the absence of supporting facts, the mere statement of a conclusion in the petition could not give rise to an implied contract. Hebern v. United States, 132 F.Supp. 451, 132 Ct.Cl. 344; Nuss v. United States, 117 F.Supp. 413, 127 Ct.Cl. 197; Kaplan v. United States, Ct.Cl., 153 F. Supp. 787.

 In a claim founded upon a constitutional taking, the burden would be on the plaintiff to show that the Government did in fact use his idea and/or material in its bond advertising campaign. Here the facts conclusively show no similarity between the advertisements and plaintiff's "comic strip." As stated above, plaintiff's strip was of the typical cartoon format and style, while the Government merely used the photographs together with a description of the heroic exploits of the recipient and in some cases an artist's drawing. Hence no property of plaintiff was taken and an action under the Fifth Amendment would not lie.

Certainly plaintiff had no property right in the medal of honor. On the contrary, if anybody, only a recipient could object to the use of such material and in each case consent was granted the Government before use.

 Furthermore, were we to hold that plaintiff had a property right which the Government used without consent of plaintiff, his cause of action would be for infringement of his copyright, a tort, for which the Government has not consented to be sued. Lanman v. United

States, 27 Ct.Cl. 260; Turton v. United States, 6 Cir., 212 F.2d 354.

██ Plaintiff, in opposition to the Government's motion for summary judgment, says a question of fact exists based upon his counter affidavit which prevents the entering of a summary judgment. However, plaintiff's affidavit merely denies the truth of the facts set forth in defendant's affidavit and demands the right to cross examine. Upon the filing of affidavits by the defendant in support of a motion for summary judgment, the burden shifts to the plaintiff to present by affidavit facts contrary thereto or to show how he proposes to support any contrary allegation in the petition. In the absence of or inadequateness of counter affidavits by plaintiff, the court may accept as true the statements in defendant's affidavits. Preveden v. Croatian Fraternal Union of America, D.C., 120 F.Supp. 33.[1] Holcomb v. United States, 146 F.Supp. 224, 135 Ct.Cl. 612, 616; Dulansky v. Iowa-Illinois Gas & Electric Co., D.C., 10 F.R.D. 566, 577. To hold otherwise would mean that any party could defeat a motion for summary judgment merely by filing a counter affidavit denying the allegations contained in the affidavit filed in support of the motion for summary judgment.

██ The affidavit then refers to an annual report referring to other media of advertising and states that a magazine advertisement of the Treasury Department appeared in a magazine in 1957. No contradiction of any material fact, or material fact is contained therein, and no different issue is raised thereby. A material fact is one that will make a difference in the result of the case. Thus, if the advertisements of 1951–1953 gave rise to no valid cause of action, the 1957 advertisement did not affect plaintiff's cause of action.

In summary, no implied contract can arise from the facts and circumstances in the case. Further, there was no tak-

[1] This case is based upon rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. which is essentially the same as rule 51 of the rules of this court, 28 U.S.C.A.

ing under the Constitution. Other issues are raised by defendant's motion which in the light of the above opinion are unnecessary to be answered.

Defendant's motion for summary judgment is granted, and plaintiff's motion is denied. Plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.