Richard C. HAGAN

v.

The UNITED STATES.

No. 601–80C.

United States Court of Claims.

Feb. 10, 1982.

---

James F. Ireland, III, Washington, D. C., for plaintiff; Alan Raywid, Washington, D. C.; atty. of record. Cole, Raywid & Braverman, Washington, D. C., of counsel.

Kathleen A. Flynn, Washington, D. C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant.

Before DAVIS, NICHOLS and SMITH, Judges.

## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

DAVIS, Judge:

Richard C. Hagan, a retired officer of the Department of State (Department or State Department), seeks compensation for work he performed but for which he has not been paid. Both sides have moved for summary judgment. We have heard oral argument and considered the briefs.

In October 1969, plaintiff, then still an active foreign service officer in the State Department,[1] was designated by a grievant as the grievant's representative on a three-member grievance panel.[2] Sometime later, before the grievance hearings, plaintiff voluntarily retired from the Department, as did Mr. Toussaint (the third-member, and chairman, of the grievance panel). Before

---

1. Plaintiff was also a lawyer.

2. These panels were composed of one member selected by management and one by the griev-

ant. The third member was selected by the other two designated members. All three members were required to be employees of the State Department.

the grievance hearing, Toussaint, but not plaintiff, was given a temporary appointment as a reemployed annuitant so that Toussaint could continue on the grievance panel (and be paid for that work).

The grievance hearing began in March 1971. The issue of plaintiff's status was promptly raised and shortly a Deputy Assistant Secretary of the Department stated expressly that plaintiff would not be recalled to active duty (in order to sit on the panel) and would not be given a consultant appointment. It was indicated, however, that Mr. Hagan could continue to serve on the panel without such appointment or recall, or that the grievant could choose another person. Apparently because the grievant desired him to continue, Mr. Hagan responded that he would continue, but that this would not constitute a waiver of any rights he might have, including the right to remuneration. The hearing continued for several sessions and the panel issued its report (late in September 1972) in favor of the grievant.

Plaintiff sought reimbursement from the Department for the 410 hours he spent on the grievance panel, and in June 1975 filed a formal claim. He made further efforts within the Department to obtain compensation. Ultimately the Department transmitted the claim to the General Accounting Office which denied it (in January 1980). This suit was filed on November 5, 1980.

Defendant first relies on the obvious fact that over six years passed between the last date on which plaintiff rendered service, and the filing date of the petition, to establish that our jurisdictional 6-year statute of limitations (28 U.S.C. § 2501) has run. On this issue there are several arguments and sub-arguments by both sides, including plaintiff's contention that he was required to exhaust administrative remedies. Plaintiff's position that his claim is not time-barred is not frivolous, and we are not required to pursue all the factual and legal inquiries that might be requisite to determine that question. The reason is that the petition, as supported by plaintiff on summary judgment, fails to make a claim otherwise within our jurisdiction. The same is true of the defense of laches (which is not jurisdictional).

■ The basic failing in plaintiff's legal claim is that the Department expressly told him, very early, that it would not recall or appoint him an employee for the purpose of the grievance panel, but that he should either continue voluntarily or withdraw. In the face of this deliberate Departmental position, Mr. Hagan continued even though no appointment or recall was ever issued or ever intended to be issued. This set of undisputed facts is enough to show that he was not a *de jure* government employee during the grievance panel's proceedings because he had no appointment whatever. *Costner v. United States*, —— Ct.Cl. ——, 665 F.2d 1016; *Baker v. United States*, 222 Ct.Cl. - - -, 614 F.2d 263 (1980).

■ Nor could there have been a contract implied in fact to use plaintiff as a consultant. An implied contract within our jurisdiction calls for an actual consensual agreement, and here it is plain that at the outset the Department squarely rejected any such agreement. Mr. Hagan says that later Departmental officials agreed that he should be reimbursed. On the skimpy record before us, we can see in the general summaries of their views which have been given to us nothing more than the feeling that plaintiff was morally entitled to be paid. In any event, we cannot see how subsequent officials—considering the matter some years after the work had been fully done—could retroactively consummate an implied agreement which the proper officers, acting at the time of the work, resolutely refused to do.

■ Similarly, it is impossible to bring plaintiff into the category of *de facto* employees who are paid by the General Accounting Office for work done without a proper appointment. One of the essential principles under which those individuals are reimbursed is that the Government affirmatively wishes them to obtain proper appointments but simply fails to carry through. That is not true here. The Department made it absolutely plain that it

did *not* want to appoint or recall Mr. Hagan.[3]

 Plaintiff also rests on two alleged violations—one of a Departmental regulation, the other of a statute—on which he says he found his claim for compensation. The regulation is a State Department directive that individuals participating in a grievance procedure shall be free from interference, coercion, or reprisal. 3 FAM § 1821.5. This is said to have been breached by the refusal to recall Mr. Hagan while Mr. Toussaint (assertedly in the same position) was recalled. It has not been proved that this action constituted interference, coercion, or reprisal.[4] In any event, and however that may be, there is nothing in the general regulation mandating compensation or the payment of money to a person injured through a violation of the regulation. Under *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), such a mandate is required for a suit, on a regulation, under the Tucker Act (28 U.S.C. § 1491) in this court.

 Similar reasoning applies to the statute said to have been violated: 31 U.S.C. § 665(b), prohibiting acceptance of "voluntary service for the United States * * * except in cases of emergency involving the safety of human life or the protection of property." Plaintiff says that this made it unlawful for him to continue to sit, without any pay, on the grievance panel (which was to be composed of Department employees). But even if this was so, § 665(b) does not suggest or intimate, let alone mandate, that compensation must be paid to a person whose work would otherwise breach the statute. Rather, the thrust of the statute is that Congress does not wish to honor pay claims founded on moral considerations or so-called quasi contracts for which pay is

not available. Congress does not want employees to work or be worked in the expectation of having Congress retroactively honor their claims. The statute is not violated by services rendered in a position that the law provides shall be unpaid, nor in cases when the service is intended or agreed to be gratuitous. *See* the discussion by Attorney General Wickersham, 30 Op.Att'y Gen. 51 (1913). No one can unilaterally declare himself entitled to compensation where no appointment or contract exists, and the statute does not so provide or contemplate. The legislation sets forth its own discipline and penalties, and does not rely on private enforcement through Tucker Act litigation. *See* 31 U.S.C. § 665(i).

For these reasons, we grant defendant's motion for summary judgment, deny plaintiff's cross-motion for summary judgment, and dismiss the petition.

---

3. We need not consider whether this court can or should apply the same principles (with respect to *de facto* employees) that the General Accounting Office has done.

4. Plaintiff relies, for proof, almost entirely on an internal Department memorandum (written in 1976) stating: "The record does not show why Hagan was not given a similar appointment [similar to Toussaint's] but a review of the discussion on his status in the hearings

indicates it was probably because of his role in representing the grievant." By itself, this does not demonstrate illegal action on the part of the Department. The quoted sentence could mean that Mr. Toussaint's position was different because he was the impartial chairman, while plaintiff was chosen by the grievant as in a sense his representative on the panel. Plaintiff was not required to continue on the panel after his retirement, and the grievant could choose another representative.