(Nos. 91-CC-3559, 92-CC-0604 cons.—)

SARGENT & LUNDY and THE EARTH TECHNOLOGY CORP., Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 30, 1996.*

MCDERMOTT, WILL, & EMERY (RICHARD SANDLER, of counsel), for Claimants.

CLAUDIA LOVELETTE, for Respondent.

## OPINION

FREDERICK, J.

This case comes before the Court on Respondent's motion to dismiss and for summary judgment. These two cases have been consolidated for trial purposes. The Court has carefully reviewed all of the pleadings in this case, and the Court has heard the oral arguments of counsel for all of the parties.

### The Facts

Pursuant to the Low-Level Radioactive Waste Policy Act of 1980, 42 U.S.C., 2021b, *et seq.*, the Respondent, State of Illinois, was designated by the Central Midwest Interstate Low-Level Radioactive Waste Commission as

the entity responsible for providing a low-level radioactive waste disposal facility for the State of Illinois and the Commonwealth of Kentucky. Acting through the Illinois Department of Nuclear Safety ("IDNS"), the State of Illinois entered into a contract with Westinghouse Electric Corporation ("Westinghouse") after Westinghouse submitted a proposal for the design, development, construction, and operation of a low-level radioactive waste disposal facility on land to be selected and acquired by IDNS for that purpose. The contract between the State of Illinois and Westinghouse was executed effective September 1, 1988.

In May of 1989, Westinghouse abandoned the project. Westinghouse failed to make substantial progress in any phase of the work. After Westinghouse's abandonment of the project, the Respondent was forced to start the project over again with a new contractor. At the time Westinghouse stopped work on the project, the State had paid Westinghouse and its subcontractors, including Claimants, Sargent & Lundy and The Earth Technology Corporation, in excess of $1.85 million for unusable work. Also, at the time Westinghouse stopped working, it had submitted invoices in excess of $1.6 million which the Respondent has declined to pay. Westinghouse has never sued the State of Illinois to recover this $1.6 million from the State of Illinois.

On February 6, 1989, Claimant, The Earth Technology Corporation, executed a subcontract with Westinghouse to provide environmental studies in connection with the low-level waste facility project. In early May of 1989, just weeks before Westinghouse abandoned the project, Claimant, Sargent & Lundy, signed a subcontract with Westinghouse to provide design and engineering services. The Respondent did not participate in the negotiations of these two subcontracts with Westinghouse. A

memorandum prepared by R.J. Suslick, Sargent & Lundy's project manager, indicated the State was purposely excluded from these negotiations. The memorandum stated, "IDNS had expressed an interest to Westinghouse to participate in their subcontract negotiations with Sargent & Lundy. Westinghouse denied this request."

The Claimants claim that they are owed money for work they did prior to Westinghouse's abandonment of the project. The Earth Technology Corporation chairman and CEO, Jack Schoustra, repeatedly threatened to sue Westinghouse but The Earth Technology Corporation never acted on those threats, and neither Claimant has sued Westinghouse to recover any monies.

In these consolidated actions, Sargent & Lundy and The Earth Technology Corporation, subcontractors to Westinghouse, seek to recover directly from the State for unpaid invoices that they submitted to Westinghouse. There is no dispute that neither Sargent & Lundy nor The Earth Technology Corporation had a contract with the State. Both Sargent & Lundy and The Earth Technology Corporation were subcontractors of Westinghouse and received payment from the State based on invoices they submitted to Westinghouse. The contract between Westinghouse and the State did specify that the State would pay Sargent & Lundy and The Earth Technology Corporation directly and not through Westinghouse. It is uncontradicted that this procedure was adopted for the benefit of the State in an effort to save the State the cost of Westinghouse's substantial mark-up.

The Respondent's contract with Westinghouse provides that Westinghouse was to be paid on a cost plus basis. The State's contract with Westinghouse provided:

"B. The services of all Subcontractors, other than of Sargent & Lundy and Earth Technology, in performance of the Work and the costs of all materials

used by (Westinghouse) or any Subcontractor, other than Sargent & Lundy and Earth Technology, in performance of the Work shall be invoiced to the Department at one hundred ten percent (110%) of the sum of actual cost plus (Westinghouse's) general and administration cost as hereinafter defined ('G&A'). (Westinghouse's) G&A rate for 1988 shall be forty-eight percent (48%) * * *.

C. The services of, and the costs of all materials used by, Sargent & Lundy and Earth Technology shall be invoiced to the Department at face value. In addition, (Westinghouse) may invoice the Department for a fee of not more than ten percent (10%) of any amount invoiced to the Department for Sargent & Lundy and Earth Technology, and any additional direct costs actually incurred by (Westinghouse) in managing and administering the Sargent & Lundy and Earth Technology Subcontracts, using the rates specified in part (A) above."

The State refuses to pay Claimants.

## The Law

Although Claimants have no privity of contract with the Respondent, the Claimants have failed to sue Westinghouse with whom they have privity of contract. Because there is no privity of contract with the State and because this Court will only imply a contract in very limited emergency situations, the Claimants seek to recover against the State of Illinois as third-party beneficiaries. This is not an emergency situation where this Court would consider finding an implied contract. There is no other basis upon which Claimants could recover on their claims before this Court at this time.

Therefore, the only way the Claimants could possibly recover is if Claimants are found to be third-party beneficiaries of the agreement between the State of Illinois and Westinghouse which was a public contract in existence prior to the two subcontracts. However, the public prime contract between the State of Illinois and Westinghouse specifically states, "Nothing in this agreement, however, shall create or be deemed to create any third-party beneficiary rights * * *." Under Illinois law, there is a strong presumption against creating rights in a

third-party beneficiary. (*Midwest Concrete Products Co. v. LaSalle National Bank* (1981), 94 Ill. App. 3d 394.) To overcome this presumption, the intent to benefit a third party must affirmatively appear from the language of the instrument and the circumstances surrounding the parties at the time of its execution. (*Bates & Rogers Construction Corp. v. Greeley & Hansen* (1985), 109 Ill. 2d 225.) The Court in *Bates & Rogers, supra*, stated:

"Only third parties who are direct beneficiaries have rights under a contract. It is not enough that the third party will reap incidental benefits from the contract. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. A third party is a direct beneficiary when the contracting parties have manifested an intent to confer a benefit upon the third party.

With respect to construction contracts this court has held that it is not enough that the parties to the contract know, expect or intend that others will benefit from the construction of the building in that they will be users of it. The contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear. *155 Harbor Drive Condominium Ass'n. v. Harbor Point, Inc.* (1991), 209 Ill. App. 3d 631; *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44."

Neither Sargent & Lundy nor The Earth Technology Corporation can satisfy this burden because the prime contract between IDNS and Westinghouse expressly bars third-party beneficiaries, and the direct payment provision in the IDNS contract was intended to benefit the State, by avoiding Westinghouse's substantial mark-up of charges that it paid. There is no benefit that Claimants can claim from the fact that payment was directly from the Respondent rather than from Westinghouse.

The contract between the State and Westinghouse expressly negates any intent to benefit either Sargent & Lundy or The Earth Technology Corporation. Paragraph 29.11 of the prime contract provides in express and unqualified terms that:

"Nothing in this Agreement, however, shall create or be deemed to create any third-party beneficiary rights in any Person not a signatory party to this Agreement."

Claimants have provided no authority to the Court which indicates there can be a third-party beneficiary in the face of this specific language prohibiting third-party beneficiary status. Claimants want the Court to rewrite the prime contract to add the language "except for Sargent & Lundy and The Earth Technology Corporation" at the end of Paragraph 29.11 of the contract between the State of Illinois and Westinghouse. This we cannot do. This was a public contract in existence at the time the Claimants entered into their subcontracts. Neither Sargent & Lundy nor The Earth Technology Corporation is a signatory to the prime agreement. Neither Sargent & Lundy nor The Earth Technology Corporation has the right to sue the State as third-party beneficiaries of this prime agreement.

The Court does not accept Claimants' argument that they are unable to sue Westinghouse for their work. Claimants may have a claim against Westinghouse but in the event they do not, it is solely the result of poor contract language in the face of the express bar to third-party beneficiary status in the Westinghouse-State prime public agreement. Anyone who deals with the State must understand that you do not work on a handshake or hope of third-party beneficiary status. *New Life Development Corp. v. State* (1992), 45 Ill. Ct. Cl. 65.

This Court must construe the prime contract as it exists and will not rewrite the contract. Absent any authority to the contrary, the bar to third-party beneficiary rights will be upheld.

Additionally, there is no manifest intention from which to imply such rights. As clearly shown in the provisions of the contract excusing the State from paying Westinghouse's 48 percent G&A rate of these subcontractors' invoices, the direct payment provision of the IDNS-Westinghouse contract was intended to benefit the State and

not Sargent & Lundy and The Earth Technology Corporation. By separately processing the payment of the invoices of these two subcontractors, the State could potentially save millions of dollars. The State, not Sargent & Lundy and The Earth Technology Corporation, was the intended beneficiary of this provision.

In *Ables v. United States* (1983), 2 Cl. Ct. 494, *aff'd* 732 F.2d 166 (Fed. Cir. 1984), the United States Court of Claims reviewed a similar factual situation and concluded that a provision requiring payment to a third party did not create third-party beneficiary rights in that third party.

The contract at issue in *Ables* was an arbitration agreement between the Air Force and a labor union, and the Claimant was an arbitrator who performed services for the parties. The Claimant sought recovery based upon a provision in the arbitration agreement that stated, "Each party shall pay the costs and expenses of the [arbitrator] they [sic] select. The parties shall share equally the costs and expenses of the neutral member." (2 Cl. Ct. at 500.) The Court ruled that the payment provision did not create a third-party beneficiary relationship, reasoning that the agreement contemplated that payment would emanate from separate agreements between the parties and the arbitrator.

As in the pay arrangement in *Ables*, the contract between the IDNS and Westinghouse also contemplated a separate agreement creating contract rights in the purported third-party beneficiary, Sargent & Lundy. If Sargent & Lundy and The Earth Technology Corporation signed agreements without the State's participation or approval that they now believe impair their right to payment from Westinghouse, this action did not create a third-party beneficiary relationship between Sargent &

Lundy and The Earth Technology Corporation and the State.

We find there are no material issues of fact. The two Claimants are not third-party beneficiaries of the contract between the State of Illinois and Westinghouse. The specific language of that prime contract prohibits third-party beneficiary status for Claimants. We cannot ignore or strike out paragraph 29.11. While the prime contract is an unusual contract, the prohibition of third-party benefits is clear. Based on the foregoing, the Respondent, State of Illinois, is entitled to a judgment as a matter of law and the Respondent's motion for summary judgment should be allowed. Because we are entering judgment in favor of Respondent, the Court need not consider the Respondent's motion to dismiss for failure of Claimants to exhaust remedies for failure to sue Westinghouse and failure to file a lien pursuant to the Public Funds Lien Act.

Therefore, it is ordered:

A. The Respondent's motion for summary judgment is granted against both Claimants.

B. Judgment is entered in favor of Respondent and against Claimants, Sargent & Lundy, an Illinois general partnership, and The Earth Technology Corporation, on Claimants' amended complaint.

C. That the claim of Claimant, Sargent & Lundy, an Illinois general partnership, is denied.

D. That the claim of Claimant, The Earth Technology Corporation, is denied.