**The DELTEC CORPORATION**

v.

**The UNITED STATES.**

**No. 70-60.**

United States Court of Claims.
Jan. 24, 1964.

William E. Willis, New York City, for plaintiff. Sullivan & Cromwell, New York City, of counsel.

Edna P. Goldberg, Washington, D. C., with whom was John W. Douglas, Asst. Atty. Gen., for defendant. Kendall M. Barnes, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and WHITAKER, DURFEE and DAVIS, Judges.

DAVIS, Judge.

In 1954 the defendant entered into a cost-plus-fixed-fee contract with Brown-Raymond-Walsh (B–R–W) to construct three military air facilities in Spain. B–R–W subcontracted portions of the work, on a fixed-price basis, to two joint ventures, Entrecanales-Moyer Brothers and Dragados-Moyer Brothers. Plaintiff, a Panamanian corporation headquartered in New York, alleges that through Moyer Brothers it entered into arrangements with these joint ventures under which it sold and supplied certain materials and equipment for the bases. Although the joint ventures have been paid on their agreements, plaintiff has not been able to obtain full recovery from them. It seeks in this suit to charge the United States for the unpaid portions of the prices of the various items it furnished, on the ground that the United States is ultimately obligated to pay. Plaintiff's motion for partial summary judgment tests the theory of the action with respect to certain valves and fittings supplied for one of the bases. Defendant denies that plaintiff can recover without proving various aspects of its case at a trial; however, the cross-motion for summary judgment asks immediate judgment for the United States on the ground that, in any event, the Government is not liable to a sub-sub-contractor—the best status plaintiff can claim. As the case has developed, out of the various defenses raised, we need consider only this across-the-board position.

On this issue Article 8 of the Government's agreement with B–R–W is the main battleground.[1] Although plain-

[1] "ARTICLE 8.—(a) Except as provided in Article 7 or as otherwise required by the Contracting Officer, all materials, articles, supplies, and equipment required for the accomplishment of the work under this contract shall be purchased by the Contractor for the Government. The Contractor shall act as the purchasing agent of the Government in effecting such purchases and the Government shall be di-

tiff has no agreement with the Government, it claims that Article 8 makes it a third-party beneficiary of the prime contract. That provision clearly makes the prime contractor (B–R–W) the Government's agent when it purchases supplies approved by the contracting officer; the "Contractor shall act as the purchasing agent of the Government in effecting such purchases and the Government shall be directly liable to the vendors for the purchase price." The contract also provides that no subcontract should be made by B–R–W without the prior written approval of the contracting officer, and that "each cost-plus-a-fixed-fee subcontract" should (unless otherwise directed) provide that the subcontractor would act as the Government's purchasing agent. From these and other parts of Article 8, one would gather that the United States was to be liable only to vendors who sell directly to the cost-plus contractor (B–R–W) or to a *cost-plus* subcontractor of B–R–W. If we confine ourselves to the four corners of the contractual words, it seems plain that a vendor to a fixed-price subcontractor (like those with whom plaintiff did business) could not look to the United States for payment. The declaration that B–R–W is the Government's purchasing agent, and the references to purchases under the contract, seem to apply only to B–R–W's own direct purchases. There is no reference to purchases under fixed-price subcontracts and the detailed coverage of cost-plus subcontracts would ordinarily exclude the other variety. In addition, it makes sense for the defendant to obligate itself directly for the price of purchases under cost-plus agreements which it ultimately has to pay in any event. If it extended this guarantee to purchases under fixed-price subcontracts, it would risk having to pay twice. The Government might be called upon, as in the present case, to pay the sub-subcontractor after it had paid the subcontractor his full contract price which was supposed to cover the purchase for which claim is made. For these reasons we hold that Article 8, read as it is written, does not extend any guarantee of payment by the United States to one in

rectly liable to the vendors for the purchase price. The exercise of this agency is subject to the obtaining of approval in the instances and in the manner required by subparagraph (c) of this Article. The Contractor shall negotiate and administer all such purchases and shall make all payments therefor unless the Contracting Officer shall otherwise direct.

"(b) Title to all such materials, articles, supplies and equipment, the cost of which is reimbursable to the Contractor hereunder, shall pass directly from the vendor to the government without vesting in the Contractor, and such title (except as to property to which the Government has obtained title at an earlier date) shall vest in the Government at the time payment is made therefor by the Government or by the Contractor or upon delivery thereof to the Government or the Contractor, whichever of said events shall first occur. This provision for passage of title shall not relieve the Contractor of any of its duties or obligations under this contract or constitute any waiver of the Government's right to absolute fulfillment of all of the terms hereof.

"(c) No purchase of materials, articles or supplies in excess of $500 shall be made hereunder without the prior written approval of the Contracting Officer, except that the Contracting Officer may, in his discretion, either reduce the limitation on the amount of any purchase which may be made without such prior approval or authorize the Contractor to make purchases in amounts not in excess of $2,500 for any one purchase without obtaining such prior approval.

"(d) No subcontract shall be entered into by the Contractor without the prior written approval of the Contracting Officer.

"(e) Each cost-plus-a-fixed-fee subcontract shall, unless otherwise directed by the Contracting Officer, provide that the subcontractor shall act as the purchasing agent of the Government to the extent and with the same authority as that specified in subparagraph (a) of this article in regard to such action by the Contractor, and shall likewise provide that title to purchases for which the subcontractor is entitled to reimbursement shall pass to the Government in the same manner as that specified in subparagraph (b) of this article in regard to purchases for the cost of which the Contractor is entitled to reimbursement."

plaintiff's class. On the face of the instrument, plaintiff is not a third party beneficiary of the Government's contract with B–R–W.

Plaintiff, however, is not content to let the matter rest with the bare words of Article 8. In its materials and arguments supporting its own summary judgment motion and opposing the defendant's cross-motion, plaintiff took the position that the actual course of dealings showed that the Government also stood behind sales to fixed-price subcontractors like Entrecanales-Moyer Brothers and Dragados-Moyer Brothers. Plaintiff cited approvals by Government officials of the sales made by plaintiff; these approvals, which were alleged to be under Article 8, were put forward as equating these fixed-price subcontracts to cost-plus subcontracts. The defendant denied that through these approvals the United States guaranteed the purchases or made itself liable for the price; the approvals were said to have been given for wholly other purposes.

In order to avoid an unnecessary and burdensome trial, both plaintiff and defendant indicated at the oral argument that, if the court so desired, they would attempt to furnish further information on this and other factual aspects of the transaction on which plaintiff bases its claim. Thereafter, the court asked the parties to agree, if possible, on the underlying facts from which plaintiff infers that the Government's officers gave approval under Article 8, so as to bind the United States. Such a stipulation has been prepared, after considerable effort by counsel to discover the facts, and presented to the court. As a result of counsel's helpfulness, the court can now decide the case without having to order a costly trial.

The stipulation recently filed shows affirmatively, in our view, that the defendant did not approve the purchases from plaintiff *under Article 8* or so act as to make itself liable to the vendor.[2]

The purchase orders were issued by Moyer Brothers and were not signed by representatives of B–R–W or of the Government. Plaintiff relies on the fact that both B–R–W and the Government officer-in-charge-of-construction did give advance approval to the purchases. But these approvals were for limited, specified, purposes and were not obtained or given under Article 8(a) and (c). B–R–W's fixed-price subcontracts with the Moyer Brothers' joint ventures provided for advance approval of items for two designated reasons: (i) in order to have supplies enter Spain free of duty, and (ii) so as to ensure compliance with specifications. Approval for the first purpose was obtained on a form (entitled "Subcontractor's Application & Approval for Duty Free *Subcontractor Owned* Material and Equipment"), signed by Moyer Brothers, which requested that the listed items be authorized to enter Spain duty free for subcontract use; an official of B–R–W added his approval and then the defendant's representative signed a declaration that he "hereby approves and authorizes duty free entry of the listed material and/or equipment." Engineering approval of materials, supplies, and equipment for specification compliance was normally a part of the duty-free importation procedure, but could also be obtained when materials were imported through a commercial import license entailing the payment of customs duties. Items (or shop drawings or other descriptive matter) which were found unsatisfactory were returned with comments on the technical deficiencies. If the item or drawing was satisfactory, it was approved "subject to contract requirements."

These approvals were not the equivalent of, or for the purpose of, an approval under Article 8. They were given for specific ends and were provided for those special purposes by the terms of B–R–W's fixed-price agreement with plaintiff's purchasers, the Moyer Brothers' ventures. As we have pointed out, Article 8

2. We assume, for present purposes, that plaintiff was the vendor. Defendant contests that assertion.

did not, on its face, make the United States liable for purchases by fixed-price subcontractors of B–R–W. The course of dealings revealed by the stipulation and the documentary materials proves that neither B–R–W nor the defendant construed Article 8 as covering purchases of plaintiff's type. In contrast to the procedure followed in plaintiff's case, the Government's contracting officer and B–R–W (as "Purchasing Agent for the United States of America") both signed purchase orders issued by B–R–W itself; and such orders incorporated a provision declaring explicitly that the purchase was for the Government and that the Government was obligated. This decisive difference in treatment signifies the distinction the Government and B–R–W made between those purchases as to which the United States bound itself monetarily to the vendor and those purchases as to which it merely noted that the item accorded with specifications and could be imported duty-free. The latter approvals were to help the subcontractor (e. g., the Moyer Brothers' ventures) and not to obligate the Government.[3] There was no departure in actual practice from the terms of Article 8.

Plaintiff argues that, nevertheless, the limited approvals should be enough because Article 8(c) was intended to prevent the Government's being subjected to liability without its advance knowledge. This purpose is said to be satisfied by the approvals given here. The contention misses the point that the United States intended to be bound only on purchases by its cost-plus prime and cost-plus subcontractors. It was only as to those purchases that the Government insisted on having advance notification. Neither the words of Article 8 nor the parties' implementation of that article reveals any other design.

 Plaintiff also emphasizes that the materials were shipped by plaintiff to the

defendant's officer-in-charge-of-construction, "attention Moyer Bros." This, too, fails to make its point. This type of consignment was expressly required by the "Duty-free Importation" clause of Moyer Brothers' subcontract with B–R–W and was obviously planned to facilitate passage of the goods through the Spanish customs. The practice had no other effect.

Plaintiff has no claim against the United States and is not entitled to recover. The defendant's cross-motion for summary judgment is granted and the plaintiff's motion for partial summary judgment is denied. The petition is dismissed.

---

3. The parties have stipulated that a subcontractor could purchase supplies without obtaining advance approval for duty-free entry; in that case, duty would have to be paid. Similarly, a subcontractor could bypass obtaining advance approval for contract compliance, but would then chance having B–R–W's inspectors reject the item after it had been incorporated in the work.