Joseph BERBERICH, et al.

v.

The UNITED STATES.

No. 292–81C.

United States Claims Court.

July 27, 1984.

James J. Mason, Tacoma, Wash., attorney of record for plaintiffs.

Fred R. Disheroon, Washington, D.C., with whom was Acting Asst. Atty. Gen. F. Henry Habicht II, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION

HARKINS, Judge.

Plaintiffs, 13 residents or owners of businesses in the Town of North Bonneville, Washington, (Town) filed a complaint in the United States Court of Claims on April 30, 1981, to obtain damages for breach of contract and violation of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Policies Act) (Pub.L. No. 91–646, 84 Stat. 1894, 42 U.S.C. §§ 4601 et seq. (1982)) in connection with relocation of the Town as part of the project to construct a second powerhouse at Bonneville Dam. The case was transferred to the United States Claims Court pursuant to section 403(d) of the Federal Courts Improvement Act of 1982. 28 U.S.C.A. § 171, note (1983).

The case is before the court on defendant's motion for summary judgment, filed May 4, 1983. Oral argument, heard on October 27, 1983, also was concerned with two related cases that arose from the same set of circumstances: *Town of North Bonneville, Washington v. United States,* 5 Cl.Ct. 312 and *Joseph Gallanger, et al. v. United States,* No. 138–83C. The Memorandum of Decision filed May 11, 1984, in *Town of North Bonneville* contains background information on the history of the second powerhouse project at Bonneville Dam, and construes the statute as well as the series of contracts between the Town and the Corps of Engineers (Corps) that are involved in this case. Documentary exhibits and other evidentiary materials filed in *Town of North Bonneville* are considered in the disposition of this case and *Gallanger.* This case and the related *Gallanger* case are concerned with the claims of residents and owners of businesses for damages as a result of the relocation of the Town to a new town site. Claims asserted in *Gallanger* are identical with claims 1 and 2 in this case. Although procedures preparatory to summary judgment had not been completed in the *Gallanger* case, during oral argument on October 27, 1983, counsel agreed that the claims in *Gallanger* could be disposed of without further argument and briefing on the basis of the ruling to be made in this case.

In this case, the complaint states three claims; claim Nos. 1 and 2 apply to each of the 13 listed individuals (eight of whom are paired as husband and wife). In claim No. 3, Pollard R. Dickson and Darlene Dickson, husband and wife, seek damages on an additional basis. The principle issue in all three claims is whether Pub.L. No. 93–251, § 83 (Section 83) and the contracts between the Town and the Corps authorize plaintiffs to assert breach claims as third party beneficiaries.

Claim No. 1 alleges breach of the Relocation Contract (Contract No. DACW57–76–C–0039 dated August 19, 1975) between the Corps and the Town, and of obligations contained in the statement of the scope of work, which had been approved by the Town and the Corps, included in the Design Contract between the Corps and the Architect/Engineer firm of Daniel, Mann, Johnson, Mendenhall/Hilton, dated September 12, 1975. Plaintiffs seek consequential damages that result from the Corps' failure under the Relocation Contract to make timely conveyance of lots in the relocation area. Such damages include: increased dollar cost of housing construction, increased interest charges over the term of mortgage loans, and loss of rentals. Under the Design Contract, plaintiffs seek damages for the diminished value of lots conveyed because of the alleged failure of the Corps to discharge site preparation obligations, such as compaction of soils,

placement of top soil, and provision of erosion control.

Claim No. 2 alleges that the Corps breached the Relocation Contract and violated the Policies Act when it condemned the former municipal lands and facilities and took possession by ex parte order on September 20, 1977. Plaintiffs assert they were constructively evicted, and seek damages for increased moving, rental and travelling expenses to and from their places of employment, increased cost of services and products purchased because commercial facilities were not available, damages to personal property due to dust and dirt attendant to defendant's destruction of adjacent property and general damages for mental and physical effects by reason of sudden deprivation of accustomed habitations.

In claim No. 3, plaintiffs Dickson seek additional damages on the ground that the Corps has refused them business relocation benefits under the Relocation Contract and the Policies Act because of Pollard R. Dickson's activity on behalf of the Town in controversies with the Corps.

## DISPOSITION

Central to all of the claims is plaintiffs' status as third party beneficiaries to the contractual arrangements that have been negotiated between the Corps and the Town. In their motion papers, both parties assert that the law of the State of Washington applies, and cite state law decisions to support their respective contentions on third party beneficiary status.

The concepts involved in allowing an individual who is not a party to an agreement to invoke its provisions in a claim for damages are nebulous, and the law that has developed is confused. *Ables v. United States*, 2 Cl.Ct. 494, 499 (1983), *aff'd*, 732 F.2d 166 (Fed.Cir.1984). When non-parties seek damages as individuals from obligations negotiated between Federal and local governmental units for the benefit of the public generally, the question of applicable law requires close examination of the relationship between the contracting parties.

■ In *Town of North Bonneville*, it was recognized that the series of contractual instruments negotiated by the Corps and the Town in many respects are *sui generis*. Although the Town's relocation is a subordinate phase of the United States' assertion of its sovereign power of eminent domain under the Bonneville Project Act, it was found that this court had jurisdiction because Section 83 specifically authorized the class of contractual relationships at issue in that case. This specific statutory authorization, and the negotiation of the contracts at issue in the context of the development and execution of a Federal project, makes this case substantially different from the class of cases where state law relative to third party beneficiaries has been found applicable. *See e.g., United States v. Nationwide Mutual Ins. Co.*, 499 F.2d 1355, 1357 (9th Cir.1974) (Eligibility of United States to recover as third party beneficiary under an automobile insurance policy providing medical care to a retired serviceman determined by application of Washington law.). It is concluded that Federal law applicable to third party beneficiary concepts applies in this case.

■ The Court of Claims has established that in an appropriate case an intended third party beneficiary of a Government contract may maintain an action under 28 U.S.C. § 1491. *Hebah v. United States*, 428 F.2d 1334, 1340, 192 Ct.Cl. 785 (1970); *Deltec Corp. v. United States*, 326 F.2d 1004, 164 Ct.Cl. 432 (1964); *see also Bogart v. United States*, 531 F.2d 988, 209 Ct.Cl. 208 (1976). An individual who is not a party to a contract, however, does not have a right to sue for breach of that contract merely because he would benefit from its performance or because it would be beneficial for him to have such right. *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195 (1912); *Orchards v. United States*, 4 Cl.Ct. 601, 609 (1984); *Ables v. United States*, 2 Cl.Ct. 494, 500 (1983), *aff'd*, 732 F.2d 166 (Fed.Cir.1984).

■ Washington State law is in accord. The requisite intent for third party beneficiary status is not a desire or purpose to confer a benefit on a third person, nor a desire to advance his interests. There must be a showing of an intent that the promisor shall assume a direct obligation to the third party. *McDonald Const. Co. v. Murray,* 5 Wash.App. 68, 485 P.2d 626 (1971); *Vikingstad v. Baggott,* 46 Wash.2d 494, 282 P.2d 824 (1955).

■ Contracts that involve governmental units, such as the Corps or the Town, require a showing that the contract was intended by the parties to confer a direct obligation to identifiable third party entities. Every contract made by a governmental unit is made for the benefit of its inhabitants. It is only where the contract made by the governmental unit manifests a specific intent to give individual inhabitants enforceable rights to compensation for its breach may an inhabitant claim damages. When both contracting parties are governmental units, there is all the more reason that such intent must be defined clearly.

■ The general rule in the case of Government contracts is that a promisor who contracts with a government or governmental agency to do an act for, or render a service to, the public is not subject to contractual liability to a member of the public for consequential damages resulting from a failure to perform. The general rule is overcome when the terms of the agreement provide such liability, and may be overcome on a showing that the promisee is subject to liability to the member of the public for damages and that a direct action against the promisor is consistent with the terms of the contract and with the policy of the statutory authority and remedies provided for breach. *Restatement (Second) of Contracts* § 313(2) (1981).

Plaintiffs acknowledge that none of the contractual instruments relied upon contain an express provision that residents or owners of businesses in the Town were to be third party beneficiaries. Plaintiffs, to show such intent, cite provisions from instruments that were sequentially negotiat-ed and accumulated by reference in the Relocation Contract and scope of work statement. These provisions deal with obligations of the parties to assure the town residents had maximum involvement in the relocation planning process by participation in workshops; obligations designed to assure the environmental assessment report reflects adequately considerations relative to social environment, human needs and human uses; and the recognition in the May 23, 1975, Memorandum of Agreement that the Corps directly had participated in the development of the concept for the master plan for the new town through a planning process that maximized citizen involvement. Plaintiffs also point to provisions in which the Corps agreed to a schedule for platting and conveyance of lands in the initial town of approximately 210 residential lots and 50 commercial lots. In the Relocation Contract, the city plat was to be completed 60 days following execution of the Design Contract, and lot selection was to commence within 30 days after acceptance of the final preliminary site plan. The scope of work statement provided that the planning was based on a construction start beginning about May 1976, and some streets were to be completed to a degree that "construction of homes by private owners can be started five months after giving notice to proceed for the construction contract." Other provisions obligated the Corps to provide erosion control, a grading plan with a minimum elevation of 40.0 feet at all building sites, and adequate fill and top soil.

The provisions cited, however, reflect only the planning efforts and procedures needed to establish obligations between the Corps and the Town. Obligations cited by plaintiffs, at most, were for the general benefit of the Town. No private right of action against the United States is prescribed for breach of the Corps' obligations. No provision establishes that the United States assumes any direct obligation to Town residents or operators of businesses for performance of these commitments. The Town is not shown to be sub-

ject to any liability for damages to Town residents or operators of businesses due to breach of any of these commitments.

Section 83, the enabling statute, authorizes contracts between the Corps and "appropriate non-Federal interests" to relocate the Town to a new town site. There is no express authority to enter contracts that would create claims in non-parties to such contracts, and such authority would be inconsistent with the policy and intent of Section 83 as a supplement to the Bonneville Project Act.

The foundation of plaintiffs' second claim is an alleged breach of the Relocation Contract. Plaintiffs' claim to damages is as a third party beneficiary to that contract. The Corps' condemnation of the Town's municipal facilities, streets, alleys and utilities, assertedly amounts to a constructive eviction in which the relocation assistance services required by the Policies Act in 42 U.S.C. § 4625(c)(3) were not provided.

Inasmuch as the Policies Act was referenced in some of the provisions of the Relocation Contract, an alleged failure to provide these services is said to amount to a breach of the Relocation Contract. Plaintiffs contend they are entitled to breach damages that are additional to the compensation already provided by the Corps under the Policies Act to residents and owners of businesses.

■ Plaintiffs' theory is defective in several respects. First, plaintiffs do not occupy the status of third party beneficiaries under the contract. Second, the condemnation action was concerned with the Town's municipal facilities, not plaintiffs' properties, and the condemnation was not in violation of the contract. Article 10 of the contract specifically recognized, and provided for, the contingency that the Town's streets, water system and other municipal real property might be acquired by condemnation. Finally, the references in the Relocation Contract to the Policies Act on which plaintiffs rely were for limited purposes. These references were not intended, nor did they have such effect, to supercede or add to the Policies Act procedures and remedies.

Article 5 of the Relocation Contract contains provisions negotiated by the Town and the Corps relative to conveyance of real property under the relocation program. Section 1.01 provides that the price to the Town and to relocatees is to correspond to the value of unimproved land, and is not to include payments under the Policies Act. Sections 2.02(b) and 2.05 relate to eligibility for purchases of lots, and the Policies Act references are for a definition of a "bonafide tenant" and a "bonafide business". Article 7 of the Relocation Contract sets forth the obligations of the Corps in the relocation assistance advisory program to businessmen of the Town. Section 7.01 provides that the Corps, in addition to the advisory workshop program, would provide consultation to existing businessmen to insure maximum relocation benefits available under the Policies Act. These references to the Policies Act were for the convenience of the parties in preparation of the provisions of the Relocation Contract, and were used for a limited purpose. They do not incorporate, as part of the Relocation Contract, the provisions of 42 U.S.C. § 4625(c)(3) with respect to relocation assistance advisory services.

In claim No. 2, plaintiffs do not contend that the payments they have received are less than the amounts they are entitled to under the Policies Act. Plaintiffs in this claim seek additional amounts as damages for breach of the Relocation Contract. Inasmuch as the Relocation Contract does not entitle plaintiffs to sue as third party beneficiaries, they may not maintain an action for breach of that contract on the basis of an alleged failure of the Corps to comply with the requirements of the Policies Act.

In claim No. 3, in addition to their claims for breach of contract damages in claims Nos. 1 and 2, plaintiffs Dickson assert a claim based on the Corps' alleged failure to pay business relocation benefits available to them under the Policies Act. Claim No. 3 involves, also, another alleged breach of the Relocation Contract as well as the

question of the Dickson's status as third party beneficiaries. In Article 7 of the Relocation Contract, the Corps and the Town agreed to do certain acts to comply with the relocation assistance advisory program required by the Policies Act. Section 7.01 states that the Corps, in addition to advisory workshops, will provide consultation to existing businessmen to assure maximum relocation benefits available under the Policies Act.

Mr. Pollard R. Dickson had been the Town's planning director throughout the relocation program and had represented it in its controversies with the Corps. The complaint alleges that plaintiffs Dickson were denied business relocation expenses, and that the Corps' refusal was based upon Mr. Dickson's activity as the Town's planning director in controversies with the Corps.

Prior to the filing of the complaint on April 30, 1981, plaintiffs Dickson had not applied for business relocation benefits. On December 8, 1981, on defendant's motion, an order was entered to stay proceedings relating to claim No. 3 until plaintiffs Dickson had exhausted their administrative remedies. In the absence of a motion to lift the stay, strict adherence to orderly procedures would make defendant's motion for summary judgment as to claim No. 3 inappropriate. The parties, however, have provided information that establishes that the administrative proceedings relative to plaintiffs Dickson's claim for business relocation benefits have not been completed. Defendant now requests that this claim in this regard be dismissed without prejudice.

■■■■ To the extent that the basis of claim No. 3 is the allegation that the Corps' refusal to pay business relocation benefits was due to Pollard R. Dickson's activities as the Town's planning director in controversies with the Corps, such allegation involves vindictiveness and sounds in tort. The Claims Court as a general rule would have no jurisdiction. 28 U.S.C. § 1491(a)(1). *Miraglia v. United States*, 141 Ct.Cl. 664, 666 (1958). A tort action may be maintained in the Claims Court,

however, if it can be shown to arise primarily from a contractual undertaking. *Bird & Sons, Inc. v. United States*, 420 F.2d 1051, 190 Ct.Cl. 426 (1970); *Chain Belt Co. v. United States*, 115 F.Supp. 701, 711–12, 127 Ct.Cl. 38 (1953).

■■■■ Summary judgment is a drastic procedure and may only be granted on a showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The moving party, here defendant, has the burden of showing the absence of a genuine issue of material fact. Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue of material fact, summary judgment must be denied even if no opposing evidentiary matter is presented. *Adickes v. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Under Federal law, the question of intent in a contract to confer a benefit on a third party is an issue of fact to be decided by the trier of fact. *United States v. Nationwide Mutual Ins. Co.*, 499 F.2d 1355, 1358 (9th Cir.1974).

With respect to the third party beneficiary issue, there is no genuine dispute as to the material facts. The relevant documentary materials submitted by the parties as exhibits in this case and in *Town of North Bonneville*, 5 Cl.Ct. 312 establish that, in the contracts negotiated by the Corps and the Town in the relocation program undertaken pursuant to Section 83, there was no agreement that either party intended to confer on residents or owners of businesses in the Town the status of a third party beneficiary with an independent right to sue the United States. Further proceedings relative to this issue are unnecessary and disposition of plaintiffs' claims by summary judgment procedures with respect to that issue is appropriate.

■■■■ Accordingly, defendant is entitled to prevail on its motion for summary judgment as to claims 1 and 2. As to claim No. 3, summary judgment at this stage is appropriate with respect to the parts of claim

No. 3 that are based upon a breach of the Relocation Contract and third party beneficiary status. Summary judgment is not appropriate as to the part of claim No. 3 based on the denial of business relocation benefits pursuant to the Policies Act. In view of the extended period that the matter has been pending completion of administrative proceedings, the better procedure with respect to the case as a whole would be to dismiss that part of claim No. 3 without prejudice to subsequent reinstatement as appropriate.

In accordance with the foregoing, the Clerk will dismiss plaintiffs' claims Nos. 1 and 2 and parts of claim No. 3 in accordance with the foregoing. That part of claim No. 3 based on a denial of business relocation benefits pursuant to the Policies Act (42 U.S.C. § 4622 (1982)) will be dismissed without prejudice.

IT IS SO ORDERED.