646

**BLAZE CONSTRUCTION,
INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 717–88C.

United States Court of Federal Claims.

Jan. 29, 1993.

Charles C. Flower, Flower & Andreotti, Yakima, WA, attorney of record for plaintiff.

John E. Kosloske, Commercial Litigation Branch, Civ. Div., Dept. of Justice, Washington, DC, with whom were David M. Cohen and the Asst. Atty. Gen., attorneys of record for defendant.

## OPINION

HORN, Judge.

### BACKGROUND

The plaintiff, Blaze Construction, Inc. (Blaze), brought this action under 28 U.S.C. § 1491 (1982) for breach of contract, or, alternatively, for an alleged taking of plaintiff's private property for a public purpose without just compensation, in violation of the Fifth Amendment to the Constitution.

The plaintiff claims that when the United States Department of Housing and Urban Development (HUD) signed a Mutual Help Homeownership Opportunity Program Annual Contributions Contract (ACC) with the Nez Perce Tribal Housing Authority, the government was, in effect, guaranteeing payment of a construction Turnkey Contract of Sale (Turnkey Contract), later signed by the Nez Perce Tribal Housing Authority and plaintiff, Blaze, and approved by HUD. In fact, the plaintiff admits that it was not a signatory to the ACC which provided funding for the project, conceding that: "direct privity with defendant is absent." Nevertheless, the plaintiff urges that defendant breached the ACC by HUD's failure to cure an alleged substantial default by the Nez Perce Tribal Housing Authority on the Turnkey Contract, as a result of which plaintiff's payment for work performed pursuant to the Turnkey Contract was delayed.

Originally, the defendant filed a Motion for Summary Judgment in which the government maintained that the Claims Court lacked jurisdiction to entertain plaintiff's claims. The defendant also contended that the Contract Disputes Act, 41 U.S.C. § 611 (1982), does not apply to contracts to which the United States is not a signatory, such as the Turnkey Contract between the Nez Perce Tribal Housing Authority and the plaintiff. Moreover, the defendant also argued that the decision by the Secretary of HUD not to declare a substantial default on the Turnkey Contract, in accordance with Clause 13.6 of the ACC, was not an abuse of discretion.

At the oral argument on defendant's Motion for Summary Judgment, the court was surprised to learn from plaintiff's counsel that the Nez Perce Tribal Housing Authority had tendered the principal amount due on the Turnkey Contract to the plaintiff. Moreover, defendant's counsel indicated that the government also knew that plaintiff had been paid. Unfortunately, no prior notice had been given to the court to indicate a change in the status of this case. The plaintiff, therefore, was directed to submit an Amended Complaint, and both parties were directed to submit additional briefings reflecting the changed status of the case.

The plaintiff filed an Amended Complaint, which requests relief under a breach of contract theory for interest from October 17, 1988 to January 2, 1990, on the now paid principal. Alternatively, the plaintiff seeks an amount equivalent to the same interest dollars based on an alleged taking of plaintiff's private property without just compensation in violation of the Fifth Amendment to the Constitution. Although plaintiff's original Complaint had included a non-specific allegation that the defendant had violated the Constitution, the specific request for an award pursuant to the Fifth Amendment to the Constitution was clearly articulated for the first time in plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment. Defendant then filed a Motion to Dismiss to replace its earlier filed Motion for Summary Judgment. Plaintiff responded to the Motion to Dismiss, followed by the filing of defendant's Reply to Plaintiff's Opposition.

Because the plaintiff has been paid the principal amount due for contract performance, only limited issues remain before the court: whether the plaintiff is entitled to be paid an amount equivalent to the interest on the now paid principal, based on either a breach of contract or on an unconstitutional taking of plaintiff's property without just compensation theory. In its Motion to Dismiss, defendant alleges that the court is without jurisdiction to rule on plaintiff's claim for interest under a breach of contract theory, and that no claim is stated under the Fifth Amendment to the Constitution.

After a thorough review of the defendant's Motion to Dismiss and the subsequent filings submitted by the parties, this court concludes that the court lacks jurisdiction to entertain a claim from this plaintiff for breach of contract and that the plaintiff does not have a valid cause of action under the Fifth Amendment to the Constitution for an unconstitutional taking. The plaintiff's Complaint, therefore, is, hereby, DISMISSED.

## FACTS

HUD is authorized to make annual contributions to public housing agencies to assist in achieving and maintaining their projects. The Secretary is directed to embody the provisions for such annual contributions in a contract guaranteeing their payment. 42 U.S.C. § 1437c (1982, Supp. V. 1987). An ACC authorizes HUD "to pledge annual contributions as a guarantee of payment by a public housing agency of all principal and interest on obligations issued by it to assist the development or acquisition of the project to which the annual contributions relate...." 42 U.S.C. § 1437c(g) (1982). *See also* 24 C.F.R. §§ 905.101–905.430 (1987).

On August 29, 1979, the United States, acting through HUD, entered into an ACC with the Nez Perce Tribal Housing Authority. The United States agreed to authorize the Nez Perce Tribal Housing Authority to undertake development of public housing projects, with financial assistance from the United States, pursuant to the ACC. On October 9, 1987, the plaintiff, Blaze, and the Nez Perce Tribal Housing Authority entered into a Turnkey Contract for construction of an Indian Public Housing Project, pursuant to which the plaintiff agreed to construct thirty-seven (37) dwelling units within the boundaries of the Nez Perce Indian Reservation in Idaho. The project was substantially completed on or about August 4, 1988.

On August 3, 1988, Gary Gors d/b/a G & C Construction, a subcontractor on the Turnkey Contract between Blaze and the Indian Housing Authority, alleged that it had not been paid for vouchers submitted, and filed a Complaint to recover over $700,-000.00 against Blaze in the Tribal Court of the Nez Perce Tribe. Subsequently, on August 4, 1988, the Nez Perce Tribal Court issued an Order directing the Nez Perce Tribal Housing Authority to withhold payment of funds to Blaze Construction until all claims before the Tribal Court were resolved, or until further Order of the Tribal Court.

On August 29, 1988, Blaze submitted to the Nez Perce Tribal Housing Authority a "Contractors Certificate and Release," which demanded the balance due on the Turnkey Contract. In compliance with the Tribal Court's Order, the Nez Perce Tribal Housing Authority refused to pay plaintiff. Therefore, on October 13, 1988, the plaintiff wrote to HUD's Director of the Indian Housing Program in Seattle[1] and demanded that HUD take action, pursuant to Clause 13.6 of the ACC, to cure what the plaintiff termed the Nez Perce Tribal Housing Authority's substantial default on the Turnkey Contract, and demanded immediate payment of the principal and interest allegedly due on the contract. By letter dated November 10, 1988, HUD responded to plaintiff that it disagreed with plaintiff's opinion that the Nez Perce Tribal Housing Authority had substantially defaulted on the Turnkey Contract and refused to pay the remaining balance and interest. Furthermore, HUD asserted that the Nez Perce Tribal Housing Authority was prohibited from making further payments until the Tribal Court lifted its Order and until Section 8(a)(3) of the Turnkey Contract was fulfilled.

On December 9, 1988, plaintiff's counsel wrote to the attorney for the Nez Perce Tribal Housing Authority that the Housing Authority owed past debt to plaintiff, which according to plaintiff's counsel was in default of the Turnkey Contract, the ACC contract, and in violation of the United States Constitution and statutes. The letter demanded that the Nez Perce Tribal Housing Authority immediately pay plaintiff the monies allegedly past due, together with interest. Also, on December 9, 1988, plaintiff filed a Notice of Appeal of the Tribal Court's Order in the Appellate Court of the Nez Perce Tribe. Plaintiff subsequently filed a complaint in the United States Claims Court.[2]

---

**1.** This letter was received by HUD on October 17, 1988.

**2.** Following the enactment of the Court of Federal Claims Technical and Procedural Improve-

ments Act of 1992, Pub.L. No. 102–572, the United States Claims Court was renamed the United States Court of Federal Claims. In accordance with General Order 33 issued by the

At the oral argument before this court, defendant's counsel represented that the injunction, issued by the Tribal Court on August 4, 1988, had remained in effect until December 1, 1989. At that time, the Tribal Court dissolved the injunction, dismissed the Nez Perce Tribal Housing Authority from the case, and directed the Nez Perce Tribal Housing Authority to release funds owed on the project to plaintiff Blaze. As a result, the plaintiff received a check from the Nez Perce Tribal Housing Authority for $522,224.65[3] on January 2, 1990, representing the remaining amount owed on the contract, less $10,000 retained as a partial fee for remaining warranty work.[4] Presently, therefore, the only remaining claim at issue in this case is whether plaintiff is entitled to $60,676.38, the interest it claims accrued from October 17, 1988 until January 2, 1990, as well as reasonable attorneys fees and costs.

## DISCUSSION

■■■ A motion to dismiss, pursuant to Rule 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC), based on a challenge to the jurisdiction of the court, requires that the court reach its decision based on the evidence presented by the parties. The Supreme Court has clearly articulated, and the United States Court of Appeals for the Federal Circuit has explicitly adopted, the general standards for weighing evidence presented in a complaint when deciding a motion to dismiss, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter, or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet*

*v. United States*, 873 F.2d 1414, 1416 (Fed. Cir.1989). If a motion to dismiss for lack of subject matter jurisdiction challenges the truth of the jurisdictional facts alleged in the complaint, the trial court may also consider relevant evidence in order to resolve disputed jurisdictional facts. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court must accept as true any undisputed allegations of fact made by plaintiff. In evaluating a motion to dismiss for failure to state a claim, the court must presume all factual allegations in the complaint are true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492, 53 L.Ed.2d 557 (1977). *See also Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686. When facts relevant to the issue of jurisdiction are disputed, the court is required to decide those facts. *Reynolds*, 846 F.2d at 747. The burden is on the plaintiff to establish jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Pasco Enters. v. United States*, 13 Cl.Ct. 302, 305 (1987); *Metzger, Shadyac & Schwartz v. United States*, 10 Cl.Ct. 107, 109 (1986). A motion to dismiss should not be granted by the court "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Furthermore, in a determination of the validity of the motion to dismiss "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). "[L]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." 2A

United States Court of Federal Claims, the court adopted the rules of the United States Claims Court. The substance of the rules of the court are unaffected by the legislation, other than with respect to the name change of the court and, therefore, the name change of the rules. However, General Order 33 also indicated that if there is a conflict between the new statute and the rules, the statute will control.

**3.** Plaintiff has used different dollar figures throughout its papers regarding the monies plaintiff claims were owed. Even at the oral argument, plaintiff's counsel remained unclear regarding precise dollar amounts due and paid.

**4.** At the oral argument, plaintiff's counsel specifically stated that it does not seek return of the $10,000 warranty retainage fee in the action currently before the court.

James Wm. Moore & Jo Desha Lucas, *Moore's Federal Practice*, ¶ 12.07[2.–5] (2d ed. 1992).

The plaintiff's first allegation is that HUD's decision not to pay the plaintiff the principal and interest allegedly due under the Turnkey Contract constitutes a breach of that contract, for which the defendant is responsible. The defendant, however, argues that there is no statute or contract which expressly authorizes the payment of interest under the circumstances presented, that the Contract Disputes Act is not applicable to plaintiff's claim, and that consequently there has been no waiver of the government's sovereign immunity to pay the interest now claimed by the plaintiff. Before addressing the merits of plaintiff's claims in this regard, the court must determine whether the Congress has consented to a cause of action, as claimed, against the United States, by which the United States has expressly waived its sovereign immunity and consented to be sued.

■■■ A waiver of sovereign immunity must be explicit; it cannot be implied. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Sherwood*, 312 U.S. 584, 586–87, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941); *see also Office of Personnel Management v. Richmond*, 496 U.S. 414, 423, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990). With regard to a claim for interest, the sovereign cannot pay interest unless consent to pay has been made clear by an act of the legislature or by a lawful contract of its executive officers. *United States v. North Carolina*, 136 U.S. 211, 216, 10 S.Ct. 920, 921, 34 L.Ed. 336 (1890); *see also United States v. North Am. Transp. & Trading Co.*, 253 U.S. 330, 336, 40 S.Ct. 518, 521, 64 L.Ed. 935 (1920).

■■■ In a traditional government contract case, the Contract Disputes Act allows for interest to be paid to contractors from the date the contracting officer receives a valid claim from the contractor pursuant to 41 U.S.C. § 605(a) (1982), until payment is made as specified in 41 U.S.C. § 611 (1982). In addition, 42 U.S.C. § 1437c(g), which governs the ACC contract entered into between HUD and the Nez Perce Tribal Housing Authority, states:

(g) Pledge of annual contributions as guarantee of payment of obligations issued by public housing agency; exception

In addition to the authority of the Secretary under subsection (a) of this section to pledge annual contributions as security for obligations issued by a public housing agency, the Secretary is authorized to pledge annual contributions as a guarantee of payment by a public housing agency of all principal *and interest* on obligations issued by it to assist the development or acquisition of the project to which the annual contributions relate, except that no obligation shall be guaranteed under this subsection if the income thereon is exempt from Federal taxation. (Emphasis added.)

Thus, it appears that the government has waived its sovereign immunity to be sued for interest in cases covered by the CDA, 41 U.S.C. § 611, and in cases covered by 42 U.S.C. § 1437c(g), depending on the terms of the contract. The question, nevertheless, remains whether the plaintiff Blaze is the proper party to sue for such interest.

Plaintiff concedes that it was not a signatory to the ACC, and that there is no privity between the plaintiff and the defendant. Plaintiff argues, however, that it is an intended third-party beneficiary of the ACC contract between the United States and the Nez Perce Tribal Housing Authority, and as an intended beneficiary of the contract, entitled to sue in this court. As a general proposition, "[b]efore a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least show that it was intended for his direct benefit." *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195 (1912). Given the stringent requirement in government contract

cases that the government must have waived its sovereign immunity and consented to be sued, the court in *Erikson v. United States* set out the criteria for those instances in which a plaintiff, claiming that it was the intended third-party beneficiary of rights, can sue as follows:

A plaintiff who would allege third party status sufficient to ground jurisdiction here must demonstrate more than that he merely benefits from a contract to which he is not a party. *Penn Towne Builders, Inc. v. United States*, 4 Cl.Ct. 677, 682 (1984). Plaintiff must show 'that the express or implied intention of any other parties to [the agreement] ... was to benefit *plaintiff*' specifically. *Id.* (emphasis in original); *see Busby* [*School of Northern Cheyenne Tribe v. United States*], 8 Cl.Ct. [596] at 602[(1985)]; *Ables v. United States*, 2 Cl.Ct. 494, 500 (1983), *aff'd without opinion*, 732 F.2d 166 (Fed.Cir.1984). The contract must also reflect the intention of the parties to give the claimant 'the direct right to compensation or to enforce that right against the promisor.' *Baudier Marine Electronics v. United States*, 6 Cl.Ct. 246, 249 (1984), *aff'd without opinion*, 765 F.2d 163 (Fed.Cir. 1985) (citing *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220 [33 S.Ct. 32, 57 L.Ed. 195] (1912)).

*Erikson v. United States*, 12 Cl.Ct. 754, 757 (1987). *See also Ables v. United States*, 2 Cl.Ct. 494, 500 (1983).

■ It also is well settled that a local authority does not become an agent of the federal government due to a federal agency's control and supervision of grant funds. *D.R. Smalley & Sons, Inc. v. United States*, 178 Ct.Cl. 593, 597–98, 372 F.2d 505, 507–08, *cert. denied*, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967). The court in *DeRoche, et al. v. United States* stated the applicable law as follows:

First, it is both appropriate and necessary in disbursing federal grant funds that the federal government establish standards and requirements for projects and have oversight of these federal funds to ensure that the intent of Congress is implemented and that the taxpayer's money is not wasted. *D.R. Smalley & Sons, Inc. v. United States*, 178 Ct.Cl. 593, 597–98, 372 F.2d 505, 507–08, *cert. denied*, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967). Second, it is well settled in this Court that a local authority does not become an agent of the federal government due to a federal agency's control and supervision of grant funds. *Id.; Somerville Technical Services v. United States*, 226 Ct.Cl. 291, 296–99, 640 F.2d 1276, 1279–81 (1981); *Housing Corporation of America v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972).

*DeRoche v. United States*, 2 Cl.Ct. 809, 812 (1983).[5]

■ The plaintiff further argues that because the defendant failed to declare that the Nez Perce Tribal Housing Authority had substantially defaulted on the Turnkey Contract, and had likewise failed to take appropriate action to cure the alleged substantial default by paying plaintiff the final payment on the Turnkey Contract, the defendant materially breached the contract, pursuant to Clause 13.6 of the ACC. Under the standard rules of construction, the interpretation of a contract provision (such as Clause 13.6 of the ACC) is a matter of law. *Fortec Constr. v. United States*, 760 F.2d 1288, 1291 (Fed.Cir. 1985); *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 386, 351 F.2d 972, 974 (1965). The language must be given the meaning which would be derived from the contract by a "reasonably intelligent person acquainted with the contemporaneous circumstances." *Hol–Gar*, 169 Ct.Cl. at 388, 351 F.2d at 975; *Truong Xuan Truc v. United States*, 212 Ct.Cl. 51, 65–66 (1976). If a contract contains general and specific provisions which are in any respect inconsistent or conflicting, the more specific provision controls. *Hol–Gar*, 169 Ct.Cl. at 396, 351 F.2d at 980.

---

**5.** Despite the citation, in "Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss," to *DeRoche v. United States*, 2 Cl.Ct. 809, 813 (1983), in support of its theory, the case seems to take a position directly contrary to plaintiff's position.

■ Clause 13.6 of the ACC defines the circumstances which shall constitute a substantial default. The contemplated circumstances are: 1) if the Indian Housing Authority does not have the legal authority to hold real property or enter into contracts; 2) if the Indian Housing Authority fails to continue a project or uphold its contractual obligations; 3) if the Indian Housing Authority's contract is held to be void, voidable or ultra vires or drawn into question in a legal proceeding; or 4) if the Indian Housing Authority asserts claims that it is not bound by its contracts. Under the ACC, in the event of a substantial default, a Seller [6] approved by HUD may look to HUD to take appropriate action to cure a substantial default, but the term appropriate action is not defined.[7] Under a plain meaning reading of Clause 13.6 of the ACC, the plaintiff's assumption that it has been given the general right to sue the government under the ACC contract is clearly not correct.

In the case at bar, HUD found that there had been no substantial default as a result of the Nez Perce Tribal Housing Authority's refusal to pay plaintiff. HUD's determination of no substantial default was based primarily on the fact that the Nez Perce Tribal Court had issued the August 4, 1988 Order prohibiting the Nez Perce Tribal Housing Authority from dispensing any further payments to Blaze until the dispute between the subcontractor and the plaintiff Blaze was settled or adjudicated. HUD, therefore, properly refused to invoke Clause 13.6 of the ACC.

The validity of the proceedings of a Tribal Court, such as the Nez Perce Tribal Court, to issue binding decisions regarding activities on the reservation is clear. As stated by the Supreme Court in *Iowa Mutual Insurance Co. v. LaPlante, et al.:*

We have repeatedly recognized the Federal Government's longstanding policy of encouraging tribal self-government. This policy reflects the fact that Indian tribes retain 'attributes of sovereignty over both their members and their territory,' to the extent that sovereignty has not been withdrawn by federal statute or treaty....

Tribal courts play a vital role in tribal self-government, and the Federal Gov-

6. According to the definitions in the turnkey contract, the "seller" is the party contracting with the Indian Housing Authority on the turnkey contract, or, in the instant case, plaintiff Blaze. By the terms of the turnkey contract, the seller agrees to sell to the purchaser (the Nez Perce Tribal Housing Authority) a "completed project consisting of certain covenants and land."

7. 13.6 *SPECIAL CONTRACT CLAUSE FOR TURNKEY PROJECTS*

With respect to any Project to be acquired by the Turnkey method which is covered by a Contract of Sale or Preliminary Contract of Sale which includes this clause and bears the written approval of HUD, the occurrence of any of the following events, if the Seller is not in default, shall constitute a *Substantial Default* under the Annual Contributions Contract: if the IHA [Indian Housing Authority] has breached its warranty to the Seller, as contained in the Preliminary Contract of Sale or Contract of Sale, that the IHA is a duly organized body politic authorized by law to hold real property and improvements thereon and that it is in fact and in law authorized to execute the Preliminary Contract of Sale or Contract of Sale; if the IHA fails to expeditiously continue the undertaking of the Pro-

ject or to comply with the Preliminary Contract of Sale or Contract of Sale; if the Preliminary Contract of Sale or Contract of Sale is held to be void, voidable or ultra vires; if the power or right of the IHA to enter into the Preliminary Contract of Sale or Contract of Sale is drawn into question in any legal proceeding; or if the IHA asserts or claims that the Preliminary Contract of sale or Contract of Sale is not binding upon the IHA for any such reason. If the Seller promptly upon the occurrence of any such event notifies HUD and provides supporting evidence thereof, and of the fact that the Seller is not in default, HUD shall determine whether a Substantial Default has occurred and whether the Seller is not in default. If HUD determines that a Substantial Default has occurred and the Seller is not in default, it shall *take appropriate action* to cure the Substantial Default and, if necessary for the prompt continuation of the undertaking of the Project, HUD shall take delivery of such right, title or interest in the Project as the IHA may have and perform the Preliminary Contract of Sale or Contract of Sale, as the case may be. The provisions of this clause are made with, and for the benefit of, the Seller and his assignees who will have been specifically approved by HUD prior to such assignment and shall be enforceable by them. [Emphasis added.]

ernment has consistently encouraged their development. Although the criminal jurisdiction of the tribal courts is subject to substantial federal limitation, their civil jurisdiction is not similarly restricted.

*Iowa Mut. Ins. Co. v. LaPlante, et al.*, 480 U.S. 9, 14–15, 107 S.Ct. 971, 975–76, 94 L.Ed.2d 10 (1987) (citations omitted).

The Court also wrote:

Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty. Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute.

*Id.* at 18, 107 S.Ct. at 977 (citations omitted).

Further evidence that Clause 13.6 of the ACC does not confer third-party rights on the plaintiff is the fact that a separate provision, Clause 14.6, was included in the ACC.[8]

Clause 14.6 of the ACC reads:

14.6 NO THIRD PARTY RIGHTS CONFERRED.

Nothing in the ACC shall be construed as creating or justifying any claim against HUD by any third party.

It is clear that Clause 14.6 in the ACC was deliberately inserted in order to eliminate claims against the United States by any third parties. Certainly, the level of specificity of Clause 14.6 of the ACC and Section 27 of the Turnkey Contract must lead to the conclusion that the parties intended that no third-party rights be conferred.

■ The plaintiff seems to argue, however, that because the Nez Perce Tribal Court Order was later deemed invalid, the Nez Perce Tribal Housing Authority should not have obeyed the Order at the time it was issued, and should have continued to disburse funds to the plaintiff. Apparently, it is the plaintiff's position that the Nez Perce Tribal Housing Authority should have foreseen that the Order imposed by the Tribal Court, temporarily staying further payments, later would be dissolved, and, therefore, the Housing Authority should have disobeyed the Tribal Court's restrictions immediately. This court, however, is firm in its belief that a party cannot be penalized when it complies with a judicial Order issued by a duly constituted court on matters within its jurisdiction. Moreover, an Order of a duly constituted court on matters within its jurisdiction is valid until it is vacated, and clairvoyance cannot be forced on a party to litigation. Consequently, HUD acted reasonably when it found that there was no substantial default on the part of the Nez Perce Tribal Housing Authority and that the Housing Authority had acted properly to withhold funds, pursuant to the Order of the Nez Perce Indian Tribal Court.[9]

---

8. The concept that no third-party rights are conferred is essentially repeated in Section 27 of the Turnkey Contract.

Section 27 of the Turnkey Contract states: *Section 27. Third Parties.*
(a) Nothing in this Contract shall be construed to create any relationship between (1) Seller's lender or any subcontractor or supplier on the one hand, and (2) the Purchaser or HUD on the other. No action may be brought by Seller's lender or any subcontractor or supplier against the Purchaser or HUD based on this Contract.
(b) The Seller shall insert in any subcontracts the provisions (appropriately modified) of this Section 27; and also a clause requiring the subcontractors to include this clause in any lower tier subcontracts which they may enter into, together with a clause requiring this insertion in any further subcontracts that may in turn be made.

9. The court also notes that there exists a strong, albeit rebuttable, presumption of good faith regarding the official actions of public officials. As clearly articulated in *P. Francini & Co. v. United States*, 2 Cl.Ct. 1 (1983):

A presumption of regularity supports the official acts of public officers, and in the absence of clear evidence to the contrary, it must be presumed that they have properly discharged their official duties. *United States v. Chemical Foundation*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926). In this connection, courts have said that the party attacking the legality of administrative action in the procurement field has the heavy burden of proving that such action was irrational or clearly illegal. [Citations omitted.]

*P. Francini & Co.*, 2 Cl.Ct. at 11; *see also Wathen v. United States*, 527 F.2d 1191, 1197, 208 Ct.Cl. 342, 351 (1975), *cert. den.*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976).

In *New Era Construction v. United States*, 890 F.2d 1152 (Fed.Cir.1989), the United States Court of Appeals for the Federal Circuit confronted a fact situation similar to the instant one. HUD and an Indian Housing Authority entered into an ACC contract, followed by a Turnkey Contract between the Indian Housing Authority and the plaintiff to construct housing on the reservation. The facts and the relevant words of Clause 13.6 of the ACC in the case at bar and in *New Era* are substantially the same. The court in *New Era* wrote:

> The only contract to which New Era was a party was the turnkey contract between it and the Housing Authority. Although the turnkey contract referred to the contributions contract between HUD and the Housing Authority, the contributions contract was not made a part of the turnkey contract, either expressly or through incorporation by reference.[10] HUD 'approved' the turnkey contract, but that contract specified that such approval indicated only that the housing project satisfied the criteria for HUD to enter into the contributions contract. *See* Form HUD–53015 (10–77), § 1.9. HUD's approval did not make HUD a party to the turnkey contract. *Cf. Correlated Dev. Corp. v. United States*, 556 F.2d 515, 519, 214 Ct.Cl. 106 (1977).
>
> The only contract to which HUD was a party was the contributions contract, which was between HUD and the Housing Authority. New Era was not a party to that contract, and that contract gave New Era no rights against HUD. To the contrary, section 14.6 of the contributions contract stated that nothing in that contract 'shall be construed as creating or justifying any claim against HUD by any third party.' With respect to that contract, New Era was exactly that: a third party.
>
> New Era argues, however, that in view of the extensive involvement of HUD in the construction project and section 13.6 of the construction project, the turnkey contract and the construction contract taken together formed a contract between New Era and HUD. The Court of Claims, the decisions of which bind us, *see South Corp. v. United States*, 690 F.2d 1368, 1370 n. 2 (Fed.Cir.1982), has held several times that the government's involvement in the financing and supervision of a contract between a public agency and a private contractor does not create a contract between the government and the contractor, for the breach of which the contractor may sue the government.

*New Era Constr. v. United States*, 890 F.2d at 1154–55.

The plaintiff in the present case, however, attempts to distinguish the *New Era* case by stating that it should have third-party beneficiary status because the term ACC is expressly defined in the language of the Turnkey Contract and the ACC is specifically referenced for inclusion in the Turnkey Contract between plaintiff and the Nez Perce Tribal Housing Authority as Exhibit A. The language of the Turnkey Contract appears as follows:

### DEFINITIONS

*Annual Contributions Contract.* The contract between HUD and the Purchaser under which HUD will provide assistance to the Purchaser for the acquisition of the Project, as more fully identified below, which Annual Contributions Contract, as amended to the date of this Contract *is included in this Contract as Exhibit A.* (Emphasis added.)

Despite the fact that plaintiff attaches great significance to the inclusion of the ACC as an exhibit to plaintiff's Turnkey Contract, absent a substantial default, neither the language of the ACC or the Turnkey Contract creates third-party rights for the plaintiff. Similarly, neither the ACC nor the Turnkey Contract make the defendant a party to the Turnkey Contract between the plaintiff and the Indian Housing Authority. In fact, to the contrary, Section 14.6 of the ACC specifically states that nothing in the ACC shall confer third-party

---

**10.** The ACC in the case at bar appears to have been specifically referenced into the Turnkey Contract between the plaintiff and the Nez Perce Tribal Housing Authority.

rights against HUD. Moreover, Section 24 of the Turnkey Contract outlines HUD's role as one of reserving funds for the project and making sure that the annual contributions to the project will not be reduced. Therefore, as was determined in *New Era*, Blaze does not have third-party rights entitling it to sue the defendant.

The plaintiff also tries to dismiss the relevance of *Correlated Development Corp. & Housing Consultants, Inc. v. United States*, 214 Ct.Cl. 106, 556 F.2d 515 (1977), as "distinguishable and not controlling in this case."[11] In both *Correlated Development*, and the present case, the defendant's only involvement in the construction project was as a party to the ACC, by which the defendant agreed to provide financial assistance to the housing authority. In *Correlated Development*, the court held that the defendant United States was not liable for breach of a contract which it had authorized between the local housing authority and the plaintiff contractor. The court decided that the ACC between the housing authority and the United States did not make the defendant a party to the Turnkey Contract, and that no third-party rights were created, as the United States' loan assistance was merely an act executed in its sovereign capacity. *Id.* at 113, 119, 556 F.2d 515. The *Correlated Development* court determined that the only way third-party rights could have been created was if one of the occurrences stated in Clause 13.6 of the ACC had taken place, including a substantial default on the part of the housing authority. In the instant case, no substantial default has occurred and no third-party rights were created.

The court in *Correlated Development* adopted the following explicit language from *Housing Corporation of America v. United States*, which is also directly on point to the issues presented in the case at bar:

The contract here in issue is one of many pursuant to which the Federal Government subsidizes projects of state and local authorities for the public betterment. *The United States, however, does not make itself a party to the contracts relating to said projects but obligates itself by separate agreements, as here, to local authorities for the funding of those projects it approves. The significance of that approval is spelled out here in Article IX. This does not create an express or implied contract between plaintiff and defendant nor does it make the Commission defendant's agent through HUD.* HUD's actions were performed in defendant's capacity as sovereign. This principle has been settled for some time by a similar case involving construction under the Federal–Aid Highways Act. *D.R. Smalley & Sons v. United States*, 372 F.2d 505, 178 Ct.Cl. 593, *cert. denied*, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967). [Emphasis added.]

*Housing Corp. of Am. v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972).

Moreover, plaintiff's case is distinguishable from *Busby School of Northern Cheyenne Tribe v. United States*, 8 Cl.Ct. 596 (1985). Plaintiff, however, submits that the defendant's alleged statement of intent in Clause 13.6 of the ACC between HUD and the Nez Perce Tribal Housing Authority contains a more definite statement of third-party rights than in the *Busby* case, and that, therefore, a third-party beneficiary status has been created in the instant case. In *Busby*, in contrast to the case at bar, the court held that the individual Indian families and children, who were attending the Busby school,

may very well be able to show they were intended third-party beneficiaries of the contracts between the School Board and the BIA [Bureau of Indian Affairs] given the pertinent statutes and regulations

---

**11.** The wording in the relevant clause in the ACC in *Correlated Development* is similar to that in the present case, and reads as follows: "... who will have been specifically approved by the Government prior to such assignment. To en-

force the performance of this provision the seller and such assignees, as well as the Local Authority, shall have the right to proceed against the Government by action at law or suit in equity."

and the underlying policy behind the contracts and applicable statutes and regulations of providing Indian children on Indian reservations with an education. *Id.* at 602. In the absence of statutory and regulatory authority, such as that operative in *Busby,* the argument by the plaintiff that Clause 13.6 creates third-party rights is tenuous at best.

■ In the present case, the plaintiff also asserts a second basis for relief, that HUD, by failing to declare a substantial default as provided by Clause 13.6 of the ACC, enabled the Nez Perce Housing Authority to withhold the amount due on the Turnkey Contract from October 17, 1988 to January 2, 1990, while the Tribal Court Order barred the payment to plaintiff. According to the plaintiff, this refusal to declare a substantial default, and to approve payment to the plaintiff, constitutes a taking of the plaintiff's property unjustly, in violation of the Fifth Amendment of the Constitution. Because the plaintiff has already been paid the principal due for contract performance, all that currently remains at issue is possible compensation equal to the interest allegedly due on the principal amount for the time after plaintiff claimed payment under the contract and the date of payment.

■ The Fifth Amendment to the Constitution prohibits the government from taking private property without just compensation. *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). The government is not prohibited from taking private property, but the Fifth Amendment places a condition of providing compensation on the exercise of that power. *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 314–15, 107 S.Ct. 2378, 2385, 96 L.Ed.2d 250 (1987). Whether a particular act is a taking depends on the circumstances of the case and the nature of the action by the government. *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978); *United States v. Central Eureka Mining Co.,* 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958).

The court in *Aris Gloves, Inc. v. United States,* summarized relevant takings law as follows:

This court will readily concede that it was not necessary for the defendant to have actually taken physical possession of plaintiff's property in order for there to have been a fifth amendment taking. A taking can occur simply when the Government by its action deprives the owner of all or most of his interest in his property. *See R.J. Widen Co. v. United States,* 357 F.2d 988, 993, 174 Ct.Cl. 1020, 1028 (1966); *United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357 [359], 89 L.Ed. 311 (1945). Just as a taking can occur when the owner is deprived of the use of his property, *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), so also can there be a taking if the Government makes it possible for someone else to obtain the use or benefit of another person's property. *E.g., see Eyherabide v. United States,* 345 F.2d 565, 570, 170 Ct.Cl. 598, 606 (1965), where the court remarked: 'If the Government's encroachments on private property make it possible for another to get the benefits of that property, the United States is liable just as if it used the property for itself.' Thus, it is the loss to the owner of the property and not the accretion to the Government which is controlling in fifth amendment cases. *See United States v. Causby, supra,* 328 U.S. at 261, 66 S.Ct. 1062; *R.J. Widen Co. v. United States, supra, Eyherabide v. United States, supra.*

The fact remains, however, that despite the existence and validity of these general principles governing the definition of a taking, they still do not create a fifth amendment violation in the instant case. Despite all the many cases cited by plaintiff to support its general rules of law, not one of them deals with a factual situation similar to the present case. The question of whether there is a fifth amendment taking cannot turn simply on general principles of law; it must be based on the particular circumstances of each case. *See United States v. Cen-*

*tral Eureka Mining Co.,* 357 U.S. 155, 168, 78 S.Ct. 1097 [1104], 2 L.Ed.2d 1228 (1958); *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 416, 43 S.Ct. 158 [160], 67 L.Ed. 322 (1922). Consequently, our decision is based not only on the general rules relating to the just compensation clause, but also on a careful consideration of the unique factual situation which exists in the present case.

*Aris Gloves, Inc. v. United States,* 190 Ct.Cl. 367, 374–75, 420 F.2d 1386, 1391 (1970).

■■■■■ When action by the government effectuates a temporary taking which prevents an owner from using property, it is no different than a permanent taking and the Fifth Amendment requires that the government pay the owner for the use of the property during this period. *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. at 318–21, 107 S.Ct. at 2387–89. Moreover, "[i]t is established that not every deprivation of use, possession or control of property is a taking... More importantly, the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract." *American Satellite Co. v. United States,* 26 Cl. Ct. 146, 158 (1992) (citing *J.J. Henry Co. v. United States,* 188 Ct.Cl. 39, 46, 411 F.2d 1246, 1249 (1969); *Consolidation Coal Co. v. United States,* 60 Ct.Cl. 608 (1925); *Marathon Oil Co. v. United States,* 16 Cl.Ct. 332, 338–39 (1989)). Stated otherwise, "the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract." *Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 770, 572 F.2d 786, 818 (1978) (citations omitted). The Supreme Court has indicated that the owner of the property at the time of the taking is the individual or entity entitled to compensation. *United States v. Dow,* 357 U.S. 17, 20–21, 78 S.Ct. 1039, 1043–44, 2 L.Ed.2d 1109 (1958). The Court of Claims adopted this reasoning in *Lacey v. United States,* 219 Ct.Cl. 551, 595 F.2d 614 (1979), stating that "the person entitled to compensation for a taking of property by the Government is the owner of the property at the time of the taking." *Id.* at 560, 595 F.2d at 619.

Because the plaintiff Blaze did not relinquish the project "free and clear of all claims, liens, or encumbrances" as required by Section 8(a)(3) of the Turnkey Contract, plaintiff has failed to demonstrate that it had enforceable ownership rights to the principal of the money due under the Turnkey Contract during the time payment was withheld as a result of the Nez Perce Tribal Court Order.

Section 8(a)(3) of the Turnkey Contract specifically states that:

(3) Conveyance of the completed Project to the Purchaser or assigns, or a relinquishment to the Purchaser or assigns of all interests and rights in the completed Project including the site, which conveyance or relinquishment shall be free and clear of any claims, liens, or encumbrances arising subsequent to the grant by the Purchaser to the Seller of a leasehold or other interest in the site in accordance with Section 1(c). The conveyance or relinquishment shall be in the name of the Purchaser or assigns. The Seller shall have no obligation for payment of any closing or settlement costs except that the Seller shall pay all documentary stamps and taxes applicable to the transaction.

HUD also identified the unfulfilled condition in a letter to plaintiff's president in November, 1988.

As you know, the Contract identifies your company as the Seller and the Nez Perce Tribal Housing Authority as the Purchaser. Section 8(a) of the Contract lists certain settlement conditions which must be fulfilled before the Seller is entitled to payment pursuant to Section 8(b). Section 8(a)(3) provides that 'relinquishment [of the completed project] shall be free and clear of any claims...' This condition has not been fulfilled to date because of a claim and corresponding legal complaint filed against your company and the Housing Authority on August

3, 1988 by one of your subcontractors doing business as G & C Construction.

 Thus, if plaintiff had no ownership rights in the principal, it could not have had the ownership rights to interest. The court notes that a claim for interest as a part of just compensation, is not a separate claim. *Blackfeet & Gros Ventre Tribes of Indians v. United States*, 127 Ct.Cl. 807, 815, 119 F.Supp. 161, 166, *cert. denied*, 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 658 (1954); *see also Minnesota Chippewa Tribe v. United States*, 229 Ct.Cl. 707, 709 (1981). No cause of action exists for interest in and of itself.

## CONCLUSION

As discussed above, this court will not ignore the Order of the Nez Perce Tribal Court issued to the Nez Perce Tribal Housing Authority, to refrain from paying plaintiff. Moreover, while the Tribal Court litigation was pending, the plaintiff, Blaze, was not yet entitled to payment on the Turnkey Contract because the plaintiff had not yet relinquished the project "free and clear of all claims, liens or encumbrances" as required by Section 8(a)(3) of the Turnkey Contract. Since plaintiff cannot claim an enforceable ownership right in the principal from October 17, 1988 to January 2, 1990, it is certainly not entitled to be paid interest compensation for a taking under the Fifth Amendment to the Constitution.

For the reasons discussed above, the court, hereby, GRANTS the defendant's Motion to Dismiss both plaintiff's claim for breach of contract and plaintiff's claim for an impermissible taking of plaintiff's property in violation of the Fifth Amendment to the Constitution.

IT IS SO ORDERED.